Seawell, J.
delivered the judgment of the court.
It has been argued by the prisoner’s counsel, that an indictment for a trespass will not lie, on the facts set forth in this case; owing, as it is alleged, to the want of an actual breach of the peace—The bank note being taken from the pocket book privily, whilst the prosecutor was collecting the papers which had fallen—and that if any offence was committed, it was larceny: and even if the court should be of opinion, actual force was employed; yet, it would then be robbery, and in both instances the trespass be merged in the felony.
*94 As to the latter argument, we find no difficulty in disposing of it. The bank note not being a subject of larceny, no felony could be committed to extinguish the trespass. And as to the first, we all agree, that if the prosecutor, upon discovering the note in prisoner’s hands, had only demanded it, and the transaction had there broken up, the refusal to deliver, and the subsequent detention, could not have, nor does it have, any influence upon the case, so as to make the first taking forcible: for though it is true the prisoner had then committed a complete felony (supposing the note a proper subject); yet as the transaction did not then break up, but was continued by the prosecutor at the same instant seizing the prisoner, who then had the note, which continued in sight and which had never been out of reach, it was to every substantial purpose reduced to possession; and the prosecutor being then overcome by the prisoner, in the scuffle, the carrying off the note constituted the actual asportation: For where there is one continuing transaction, though there be several distinct asportation in law, yet the party may be indicted for the final carrying away, and all who concur are guilty, though they were not privy to the first, or intermediate acts. The case of the King v. Dyer and Dister which is cited in 2 East's Crown Law 767, was, where Dyer, the master of a boat, was employed to bring on shore a quantity of barilla, and Dister and others were employed as laborers to remove the barilla after it was landed, to Hawkin’s warehouse; that while the barilla was in the boat, some part of it was separated from the rest and concealed in another part of the boat, without the privity of Dyer; that afterwards Dyer and Dister and the others, who had removed and concealed it, carried it off, and though a complete legal taking and carrying away was performed before Dyer had any agency or knowledge, yet as he joined in the final actual as-portation, he was held guilty and convicted. To the same effect is the case of the King v. Atwell & O'Donnell & als, cited in the same book. Suppose a thief should privately *95 take money from one pocket and place it in another for the convenience of handing it at a suitable time to his comrade, and when he attempted to take it out again, the owner should seize his hand, upon which a scuffle takes place and the owner is overpowered or awed to desist, and the thief goes off with the money? This, surely, would be robbery—in the present case, the prisoner being seized before the note was even out of the prosecutor’s presence, and being then in reach, was as much in his possession as the pocket-book he had laid down. Had the prosecutor caught hold of the bill and then been overcome or intimidated, it would have been robbery; and if an actual touching of the note be essential to the regaining possession, (which I, for my own part, by no means think necessary) the jury had ample room to presume it from the circumstances, and should have been so instructed. The snatching any thing unawares, is not considered a taking by force; but if there be a struggle to keep it, or any violence done the person, as in Lapier’s case of the tearing the ear, the taking is a robbery. Buller Justice in Rex v. Horner, cited in Leach’s Crown Law, in a note to Baker’s case. This distinction steers clear of the cases cited in Hawkins and Hale of a stealing of the purse privily, and upon the owner’s discovering it in the hands of the thief, demanding it, when the thief threatened to pull his house from over his head if he said any thing about it, and rode off, which was held to be no robbery: It is also to be remarked, that at that period, the prevailing opinion seemed to be, that a taking to constitute robbery must be through fear.—Wherefore, we are all of opinion, the jury did right in finding the prisoner guilty; that it was a rank trespass, and the rule for a new trial should be discharged. It would be a reproach to the law to consider the taking a hat which a frighted man had let fall accidentally from his head, a robbery, the lifting of a sash, a breaking of a house, so as in both instances to constitute capital offences, and not to consider the present, a taking by violence, when the final carrying away was by the dint of strength.